GOVERNMENT OF THE VIRGIN ISLANDS
v.
JUAN JACOBS, ROBERTO FELICIANO,
MIGUEL CORCINO,
MIGUEL CORCINO, Appellant

No. 18,506

United States Court of Appeals
Third Circuit

Argued January 26, 1971
Decided February 19, 1971

*See, also, 438 F.2d 329*

VINCENT A. GAMAL, ESQ., Christiansted, St. Croix, V.I.,
*for appellant*

ROBERT M. CARNEY, ESQ., United States Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before STALEY, FREEDMAN and ADAMS, *Circuit Judges*

### OPINION OF THE COURT

PER CURIAM:

Defendant is one of a group of seven young men who were charged under 14 V.I. Code §§ 921–922 with murder in the first degree. A jury found the defendant guilty; the

District Court imposed the mandatory sentence of life imprisonment; and the defendant has appealed.

On July 19, 1969, a woman and her friend were walking from Christiansted, St. Croix to their home nearby. Four men, Marcello Corcino (brother of appellant), Pedro Bennett, Raul Parilla and Roberto Parilla accosted the woman and man, one hitting the woman on the neck with a stick, the others starting a fight with the man.[1] The woman ran to her home and brought back the decedent, Thomas Altius, her common law husband. When decedent joined in the fight, a neighbor came out from his home to help break up the fracas. Decedent, the woman and their friend then went to their home.

During the fight, Marcello Corcino was injured and thereafter taken to a hospital. At this time, the defendant, Miguel Corcino, was visiting the home of Roberto and Jose Feliciano. One of the four men who had been in the fight, Robert Parilla, told Miguel that Marcello had been hurt and that three Antiguans were responsible. The Feliciano brothers, Roberto Parilla, and defendant went first to the hospital to visit Marcello, and then took a taxi toward decedent's home.

Soon after the decedent, his wife and their friend arrived home, Raul Parilla and Pedro Bennett (both of whom had participated in the fight) and Juan Jacobs (a new partisan) approached the home occupied by the decedent, his wife, and their friend, and began berating them. After failing in their efforts to break into the house, the three men left and walked in the direction of Christiansted. They encountered the four men in the taxi who were coming from the hospital. The neighbor who had helped break up the original fight testified that he saw the four

---

[1] The reason for the provocation is not wholly clear, but it appears the man and woman were Antiguans while the four boys were Puerto Ricans.

step out of the taxi and that one of them (later identified as Roberto Feliciano) was carrying a gun.

The seven men then proceeded to the victim's house. The house consisted of two rooms. Each room had a window, and wooden shutters covered them. Either at this time or when the three men were there before, Pedro Bennett crashed a pickaxe into one of the shuttered windows. The pickaxe stuck in the wood and created an opening. One or two shots were then fired through the opening, killing Thomas Altius.

At the trial of defendant, Jose Feliciano, Raul Parilla and Roberto Parilla testified for the Government that the defendant had taken the gun from Roberto Feliciano, and had fired the shots through the window. The defendant testified that Pedro Bennett seized the gun from him at the last second, and fired the shots.

On this appeal, the defendant argues that the verdict of guilty of murder in the first degree[2] is not supported by the evidence, and that he could not properly be convicted of a crime more serious than murder in the second degree on the theory that he did not specifically aim at any occupant of the house.[3] Judge Maris has previously construed the meaning of 14 V.I. Code § 921 which requires proof of a "willful, deliberate and premeditated killing" for a conviction of first degree murder. He said in Government of Virgin Islands v. Lake, 362 F.2d 770, 776 (3rd Cir. 1966), that premeditation "must ordinarily be inferred from the objective facts. . . . Accordingly, if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it may fairly be inferred, in the

---

[2] 14 V.I. Code § 921: "Murder is the unlawful killing of a human being with malice aforethought." 14 V.I. Code § 922(a): "All murder which is . . . willful, deliberate and premeditated killing . . . is murder in the first degree." Under 14 V.I. Code § 923(a), a sentence of life imprisonment is mandatory following a conviction of first degree murder.

[3] 14 V.I. Code § 922(b): "All other [than first degree] kinds of murder are murder in the second degree."

absence of evidence to the contrary, that the destruction of that other's life was intended." In addition, Judge Maris said that the mental processes involved in the forming of a "deliberate" design to kill may occur "in a brief moment of thought" before the act.

In this case, the jury had adequate evidence from which it could find willfulness, deliberateness and premeditation. The defendant had seen his brother at the hospital and then went to the scene of the crime with another person who was carrying a shotgun. They joined a group which had been harassing and intimidating the occupants of a two-room wooden shack. Three members of the group testified that the defendant took the gun, went to the window, and fired through the opening of the shutter into the house. There was introduced into evidence photographs of the house, revealing it to be quite small. The jury could properly find from the photographs that a man firing a shotgun into the house, knowing that three persons were inside, intended to hit the occupants. Considering all the evidence presented in this case, we conclude that it was sufficient to support the submission of the case to the jury and to justify their verdict of first degree murder.[4]

Accordingly, the judgment of the district court will be affirmed.

---

[4] The conviction of Pedro Bennett for first degree murder as an aider and abettor was previously upheld by this Court in Government of Virgin Islands v. Bennett, 427 F.2d 535 (3rd Cir. 1970). Juan Jacobs and Roberto Feliciano were allowed to plead guilty to second degree murder.